## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WINSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15 C |
| v. | ) | |
| | ) | Hon. |
| The CITY OF CHICAGO, Chicago | ) | District Judge |
| Police Sergeant ERIC CATO (Star No. | ) | |
| 1321), Chicago Police Officers ANGELA | ) | JURY TRIAL DEMANDED |
| PITTMAN (Star No. 8235), SCOTT | ) | |
| HALL (Star No. 12973), R. NORWAY | ) | |
| (Star No. 6797), K. BIGG (Star No. | ) | |
| 620), MELVIN ECTOR, BRIAN | ) | |
| MCHALE, and UNKNOWN CHICAGO | ) | |
| POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, MICHAEL WINSTON, by his attorneys, LOEVY &
LOEVY and JEFFREY URDANGEN, and complaining of Defendants CITY OF
CHICAGO, Chicago Police Sergeant ERIC CATO (Star No. 1321), Chicago Police
Officers ANGELA PITTMAN (Star No. 8235), SCOTT HALL (Star No. 12973), R.
NORWAY (Star No. 6797), K. BIGG (Star No. 620), MELVIN ECTOR, BRIAN
MCHALE, and UNKNOWN CHICAGO POLICE OFFICERS (collectively,
"Defendants"), states as follows:

## INTRODUCTION

1.    In January of 2013, the Defendants stopped Plaintiff's car, detained
him, searched him, and arrested him without probable cause.

2. The Defendants then fabricated a false story and false evidence in order to ensure that Plaintiff was wrongly prosecuted for a drug crime.

3. During the resulting criminal proceedings, the Defendants proceeded to testify falsely about the events surrounding Plaintiff's arrest.

4. Plaintiff now brings this action pursuant to 42 U.S.C. § 1983 and Illinois law to redress the Defendants' tortious conduct and their deprivation under color of law of Plaintiff's rights as secured by the U.S. Constitution.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b). All of the parties reside in this judicial district, and the events and omissions giving rise to the claims asserted herein all occurred within district.

## THE PARTIES

7. Plaintiff Michael Winston is a resident of Chicago, Illinois.

8. Defendants Chicago Police Sergeant Eric Cato (Star No. 1321), Chicago Police Officers Angela Pittman, Scott Hall, R. Norway, K. Bigg, Melvin Ector, Brian McHale, and Unknown Chicago Police Officers are all police officers employed by the City of Chicago. These Defendants were acting within the scope of their employment at all times relevant to this action. Each of these Defendants is sued in her or his individual capacity.

2

9.     Defendant City of Chicago is a municipal corporation located in northern Illinois.

## BACKGROUND

10.     In January of 2013, Plaintiff lived in Chicago with his girlfriend Andrea Jefferson and her two children, D.J. and J.J.

11.     On the morning of January 15, 2013, Plaintiff, Andrea, D.J., and J.J. started their day as they would any other weekday, by preparing to go to work and to school.

12.     At approximately 7 a.m., the family left their home in Andrea's car. Plaintiff dropped D.J. at school, Andrea at work, and finally took J.J. to Andrea's mother's house. Plaintiff spent the remainder of the morning at Andrea's mother's house.

13.     Just before noon, Andrea called Plaintiff and asked him to bring her lunch at work. She told Plaintiff to go to Sam's Mini Mart and to buy her a sandwich.

14.     Plaintiff went to Sam's Mini Mart, which was located on the northeast corner of 63rd and Honore Streets, and purchased a sandwich and drinks.

15.     Plaintiff left the store with Andrea's food, got in his car, and turned left to drive south on Honore Street.

## PLAINTIFF'S ARREST

16.     As he was travelling south on Honore, Plaintiff saw a van speeding up behind him in his rear-view mirror. Plaintiff pulled to the side of the narrow street to allow the van to pass, but the van stayed behind him.

17.     As soon as Plaintiff began to turn left onto 66th Street, he was surrounded by several police vehicles. The van that had appeared behind him was an undercover Chicago Police Department vehicle. All of the vehicles that surrounded Plaintiff were driven by the Defendants.

18.     The Defendants had no justification for pulling over Plaintiff's car. In addition, the Defendants did not provide Plaintiff any justification for the traffic stop when they pulled Plaintiff over.

19.     The Defendants took Plaintiff's phone and wallet. After taking his phone and wallet, the Defendants asked Plaintiff to step out of his car.

20.     As soon as Plaintiff was out of his car, the Defendants immediately detained Plaintiff and placed him in handcuffs.

21.     The Defendants then performed a pat-down search of Plaintiff. During that search they found approximately $50 in Plaintiff's pocket.

22.     In the pat-down search, the Defendants did not find any drugs or anything else illegal.

23.     Shortly thereafter, the Defendants performed a search of the vehicle that Plaintiff had been driving. They did not find any drugs in the car, nor anything else illegal.

4

24.    The Defendants lacked probable cause or any lawful justification for seizing Plaintiff, for detaining and cuffing him, for searching him, or for searching the car that he was driving. In addition, the Defendants did not provide Plaintiff any justification for seizing him, for detaining and cuffing him, for searching him, or for searching the car that he was driving.

25.    Nonetheless, Plaintiff was placed under arrest and driven in one of the Defendants' vehicles to the police station.

26.    The Defendants had no justification for arresting Plaintiff. Nor did the Defendants provide Plaintiff any justification for arresting Plaintiff.

## THE DEFENDANTS FRAME PLAINTIFF

27.    Back at the police station, the Defendants put Plaintiff in a holding cell. The Defendants approached him and said words to the effect of "Do you want to save yourself?" By this statement, the Defendants meant to communicate to Plaintiff that he could avoid criminal charges by cooperating with them. Plaintiff had no information to give.

28.    Plaintiff asked why he had been arrested. The Defendants provided no response.

29.    A short time later, the Defendants showed Plaintiff a large plastic baggie, which appeared to be filled with many smaller bags, each containing illegal drugs appearing to be cocaine. While showing Plaintiff these items, the Defendants said words to the effect of "These are yours," and "I'm going to put these on you

because you do not want to cooperate." They said these things knowing that the drugs in question had nothing to do with Plaintiff.

30.    Plaintiff was confused and asked the Defendants why they were doing what they were doing.

31.    The Defendants responded by telling Plaintiff to take his shoelaces off and to get ready to go to jail.

## PLAINTIFF'S CRIMINAL TRIAL

32.    Based on the Defendants' descriptions of Plaintiff's arrest, as memorialized in their police reports and as communicated to the State's Attorney's Office, Plaintiff was charged with distributing cocaine.

33.    Plaintiff was charged with this crime despite the fact that he had not possessed cocaine at any time during his interaction with the Defendants described above.

34.    In addition, because the Defendants had pulled Plaintiff over close to a school, the false charges against him included an enhancement for selling drugs within 1000 feet of a school.

35.    If convicted, Plaintiff faced years in prison.

36.    He was detained at the Cook County Jail awaiting trial.

37.    In addition, he was forced to retain a criminal defense attorney to defend him against the false criminal charges.

38.    In December 2013, Plaintiff was tried before a jury in Cook County.

39.     During the trial, the Defendants took the witness stand and gave a false, perjured account of Plaintiff's arrest.

40.     The perjury referred to in the preceding paragraph included the following false statements:

a.     The Defendants testified that while working undercover they had encountered Plaintiff in Sam's Mini Mart where they had conducted a controlled drug buy.

b.     The Defendants testified that they had asked Plaintiff for cocaine. They testified that Plaintiff responded by producing a small plastic bag of cocaine from inside of his mouth. According to the Defendants, Plaintiff spit the bag of cocaine from his mouth, to his hand, and then provided it to Defendant Pittman.

c.     Defendant Pittman testified that she gave Plaintiff $10 in marked (or pre-recorded) currency in exchange for the cocaine.

d.     Defendant Pittman testified that after she had purchased the baggie of cocaine from Plaintiff, she placed the baggie in her pants pocket and maintained custody of that baggie until it was heat-sealed in a larger plastic bag and was placed into evidence.

e.     The Defendants testified that they had visual contact with Plaintiff for the entire time between the moment that he sold Defendant Pittman cocaine and the moment that they pulled him over.

7

41. All of the testimony referred to in the preceding paragraph was completely false:

     a.    The Defendants never encountered Plaintiff at Sam's Mini Mart.

     b.    The Defendants never asked Plaintiff if they could buy cocaine from him.

     c.    Plaintiff never had cocaine in his possession.

     d.    Plaintiff never spit a bag of cocaine out of his mouth. Indeed, later forensic testing of the bag of cocaine that the Defendants used to frame Plaintiff showed conclusively that the bag of cocaine was never in Plaintiff's mouth.

     e.    The Defendants never recovered marked (or pre-recorded) $10 that they testified they had used to buy cocaine from Plaintiff.

42. At the conclusion of the testimony, the jury in Plaintiff's criminal case was unable to convict him.

### THE CITY'S UNCONSTITUTIONAL POLICIES

43. Plaintiff's unlawful seizure, search, and criminal prosecution by the Defendants was not an isolated incident. Instead, the Defendants were acting pursuant to the policies and widespread practices of the Chicago Police Department to unjustifiably arrest and search individuals, particularly young African-American men, to initiate false criminal charges against those individuals, and to provide false testimony in criminal proceedings in support of their misconduct.

44.     Examples of this widespread practice are myriad, and include the City's own decision to disband its "Special Operations Section," which faced countless allegations that its officers would falsely arrest and plant drugs on law-abiding citizens, particularly young African-American men.

45.     Indeed, the City's public disclosures reveal that its officers amassed literally hundreds of complaints but were never punished, allowing CPD officers to violate rights with impunity.

46.     As a result of this widespread misconduct, the City has faced numerous lawsuits resulting in payouts to victims, and judgments against the City and its employees.

47.     Nonetheless, even after ample notice of the misconduct, the City continued to allow and endorse police officers' widespread practice of planting evidence on innocent individuals and then testifying falsely about it in criminal proceedings.

48.     For example, in a federal civil rights trial in which a jury verdict was entered against the City, Karolina Obrycka testified that Chicago Police Officers threatened to plant drugs on staff at her place of employment if she did not drop her complaint against another police officer.

49.     All of the above examples are evidence of the City's policies and widespread practices that were also the moving force behind the violation of Plaintiff's rights described above.

## LEGAL CLAIMS

50.     In the manner described more fully above, the Defendants violated Plaintiff's constitutional rights, causing him damage. Among others, the Defendants violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. In addition, the Defendants violated Plaintiff's constitutional right to equal protection of the law.

51.     The Defendants' conduct also constitutes the tort of malicious prosecution under state and federal law in that the Defendants caused Plaintiff to be prosecuted for a crime he did not commit, all without probable cause.

52.     The Defendants also reached an agreement to deprive Plaintiff of his constitutional rights via illicit means, and one or more of them took actions in furtherance of this conspiracy, all in violation of both state and federal law.

53.     Some or all of the Defendants also failed to intervene to prevent the constitutional violations described herein, notwithstanding a reasonable opportunity to have prevented those constitutional violations.

54.     The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others such that the Defendants' actions shock the conscience. In addition, the misconduct described herein was extreme and outrageous, it was rooted in an abuse of power and authority, and it was undertaken with the intent to cause severe emotional distress to Plaintiff.

55.     Plaintiff's injuries were proximately caused by policies and practices on the part of the City of Chicago to pursue wrongful convictions in drug cases through untruthful testimony. These policies and practices are applied almost exclusively to young African-American men. In this way, the City of Chicago violated Plaintiff's rights by maintaining policies and practices which were the moving force driving the foregoing constitutional violations.

56.     The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department, were able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

57.     The widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago declined to implement sufficient training or any legitimate mechanism for oversight or punishment. Indeed, the Department's system for investigating and disciplining police officers accused of this type of misconduct was, and is, for all practical purposes, nonexistent.  As a result, officers are led to believe that they can act with impunity, thereby encouraging the very type of abuses which befell Plaintiff.

58.     All of Defendants' interactions with Plaintiff and the criminal case brought against him were undertaken under color of law, and within the scope of their employment.

59.    Because each of the Defendants acted within the scope of their employment, the City of Chicago is therefore liable as their employer for any resulting damages and award of attorneys' fees.

60.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. Accordingly, the City of Chicago is required to pay any judgment for compensatory damages entered against any of the Defendants in this case.

WHEREFORE, Plaintiff, MICHAEL WINSTON, respectfully requests that the Court enter judgment in his favor and against Defendants the CITY OF CHICAGO, Chicago Police Sergeant ERIC CATO (Star No. 1321), Chicago Police Officers ANGELA PITTMAN (Star No. 8235), SCOTT HALL (Star No. 12973), R. NORWAY (Star No. 6797), K. BIGG (Star No. 620), MELVIN ECTOR, BRIAN MCHALE, and UNKNOWN CHICAGO POLICE OFFICERS, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages, against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, MICHAEL WINSTON, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

**MICHAEL WINSTON**

By: /s/ Steven Art
One of Plaintiff's Attorneys

| | |
|---|---|
| Arthur Loevy | Jeffrey Urdangen |
| Jon Loevy | Clinical Associate Professor of Law |
| Steven Art | **BLUHM LEGAL CLINIC** |
| David Owens | Northwestern University School of Law |
| **LOEVY & LOEVY** | 375 East Chicago Avenue |
| 312 North May Street | Chicago, IL 60611 |
| Suite 100 | (312) 503-7413 |
| Chicago, IL 60607 | j-urdangen@law.northwestern.edu |
| (312) 243-5900 | |
| steve@loevy.com | |

13